UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C.W.M., <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO et al., <br><br> Respondents. | CASE NO. 2:25-cv-02688-DGE <br><br> ORDER GRANTING PETITIONER'S SECOND AMENDED HABEAS PETITION (DKT. NO. 8) |

Before the Court is Petitioner's second amended petition for writ of habeas corpus. (Dkt. No. 8.) Having reviewed the petition, the briefing, and all documents filed in support and against the petition, the Court GRANTS the petition for writ of habeas corpus.

I.   BACKGROUND

**A. Factual Background**

Petitioner, a citizen of Kenya, entered the United States on December 4, 2022 using a B2 visitor visa. (Dkt. No. 8-1 at 12.). She was authorized to remain in the United States until May 22, 2023. (*Id*.). On May 15, 2023, Petitioner filed an application for asylum with United States

Citizenship and Immigration Services ("USCIS") using form I-589.  (*Id*. at 11.).  On October 19, 2025, Petitioner filed an application for employment authorization with USCIS based on her pending asylum application.  (*Id*. at 9.)  USCIS granted employment authorization beginning November 13, 2023 and valid through November 12, 2028.  (*Id*. at 8.)

However, on November 10, 2023, Petitioner departed the United States on a cruise ship that traveled to the Bahamas.  (Dkt. Nos. 12-1 at 3; 8 at 1.)  Returning on November 15, 2023, she sought admission into the United States at Miami, Florida.  (Dkt. Nos. 8 at 1; 8-1 at 7.)  At that time, she presented a Washington State driver's license and a copy of her asylum application receipt.  (Dkt. No. 12-1 at 3.)  Rather than granting admission, Petitioner was required to appear for deferred inspection at a deferred inspection office in Seattle, Washington on January 15, 2024.  (Dkt. No. 8-1 at 7.)

After appearing for deferred inspection, Petitioner was released on an "Order of Release on Recognizance."  (*Id*. at 6.)  The Order stated:

> You have been arrested and **placed in removal proceedings.  In accordance with section 236** of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following instructions: . . . .

(*Id*.) (emphasis added).  Petitioner was required to report in person monthly to the Department of Homeland Security ("DHS") Office located in Tukwila, Washington.  (*Id*.).  Respondents assert that on January 15, 2024, "Petitioner was port paroled for a period of one year," but do not define the meaning or significance of a person who is "port paroled."  (Dkt. No. 11 at 2.).

On October 9, 2025, USCIS asserted it could not process Petitioner's asylum application because Petitioner had been "placed in expedited removal[.]" (*Id*. at 2.)  USCIS denied the asylum application and directed Petitioner to request a credible fear interview with an asylum officer by contacting Immigration and Customs Enforcement ("ICE").  (*Id*.)  Petitioner received

the October 9, 2025 USCIS letter on November 13, 2025. (Dkt. No. 14-1 at 3.) In accordance with USCIS's letter, Petitioner requested a credible fear interview on November 17, 2025, November 18, 2025, and December 2, 2025. (*Id.*)

On December 18, 2025, Petitioner appeared at the DHS office in Tukwila as instructed. (*Id.*) Petitioner asserts she was previously informed she would receive a Notice to Appear ("NTA") on that date. (*Id.*) At this check-in, ICE detained Petitioner and she was provided "a document to sign related to a judge and bond hearing." (*Id.*) She did not sign the document and was not given a copy of this document. (*Id.*). Petitioner then was transferred and "booked into the NWIPC [(Northwest ICE Processing Center)] Pending removal proceedings." (Dkt. No. 12-1 at 3.). However, Respondents now assert "Petitioner was taken into custody in order to proceed with the expedited removal process initiated in January 2024." (Dkt. No. 11 at 2.)

In detention, Petitioner requested a credible fear interview on December 30, 2025, January 3, 2026, January 4, 2026, and January 10, 2026. (Dkt. No. 14-1 at 2.) There is nothing in the record indicating Petitioner has been scheduled for a credible fear interview and Respondents are silent on whether one has been scheduled, will be scheduled, or when it could potentially be scheduled. (*See* Dkt. No. 11 at 2.). There also is no information in the record as to whether an NTA was ever issued.

Petitioner identifies she conducted her regular check-ins with ICE since February 14, 2024 (Dkt. No. 14-1 at 2–3), and nothing in the record indicates she ever violated the terms of the January 14, 2024 Order of Release.

At present, Petitioner remains detained at the NWIPC without any information as to the status of any removal proceedings or other immigration process.

**B. Procedural Background**

Petitioner first filed a petition for writ of habeas corpus on December 23, 2025; she has twice amended her petition. (Dkt Nos. 1, 4, 8.) Petitioner's operative petition, filed on January 12, 2026, asserts that she was not provided any written notice before her re-detention on December 18 and therefore her detention violates the Fifth Amendment's Due Process Clause. (Dkt. No. 8 at 11.) Respondents assert Petitioner is subject to expedited removal and mandatory detention pursuant to 8 U.S.C. § 1225(b). (Dkt. No. 10 at 5.)

## II. ANALYSIS

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show [she] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)). While the Court cannot hear challenges arising from the government's decision to commence removal proceedings or detain an individual, the Court can hear cases that, like here, challenge the constitutionality of detention.

### B. Petitioner is not subject to mandatory detention under § 1225(b).

At the outset, Respondents argue Petitioner is subject to mandatory detention and expedited removal proceedings pursuant to 8 U.S.C. § 1225(b). (Dkt. No. 10 at 4–6.) § 1225 applies to "applicants for admission" to the United States, who are defined as an "alien present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, both of which are subject to mandatory detention.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)). Petitioner argues § 1225 cannot be the basis for her detention and that she was entitled to notice and an opportunity to be heard before being detained. (Dkt. No. 14 at 4–8.)

A review of the record does not support the conclusion that Petitioner is subject to § 1225. First, the plain language of the Order of Release identifies that Petitioner was released pursuant to 8 U.S.C. § 1226. (Dkt. No. 8-1 at 6) ("In accordance with section 236 of the Immigration and Nationality Act [("INA")] . . . , you are being released on your own recognizance[.]"[2]).

Second, nothing in the record suggests Petitioner was paroled into the United States for "for urgent humanitarian reasons or significant public benefit," which is the only basis to parole a person into the United States under § 1225. *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). Notably, Respondents make reference to Petitioner having been "port paroled for a period of one year" (Dkt. No. 11 at 2), but they do not define what "port paroled" means

---

[1] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

[2] INA Section 236 is codified at 8 U.S.C. § 1226.

ORDER GRANTING PETITIONER'S SECOND AMENDED HABEAS PETITION (DKT. NO. 8) - 5

and do not affirmatively state Petitioner was paroled into the United States for urgent humanitarian reasons or significant public benefit. Nor is the term "port paroled" used anywhere in § 1225.

Third, Respondents do acknowledge Petitioner was "released by ICE on conditional parole." (Dkt. No. 10 at 5.) And "conditional parole" is a term found in § 1226; specifically, a noncitizen may be granted conditional parole pending a decision on whether the noncitizen is to be removed from the United States. *See* § 1226(a)(2)(B).

Fourth, Respondents claim Petitioner was taken into custody because it has been discovered that she had not had an "expedited removal interview" and it was necessary to "proceed with the expedited removal process." (Dkt. No. 11.) But nowhere in § 1225 does the phrase "expedited removal interview" appear and this assertion is inconsistent with Respondents' lack of action since Petitioner's detention. Presumably, an "expedited removal interview" refers to an asylum interview by an asylum officer for the purpose of determining whether the noncitizen has a credible fear of persecution. *See* § 1225(b)(1)(B)(i). But a credible fear interview has not been conducted nor scheduled, despite Petitioner's numerous requests.

Fifth, Petitioner was informed she would be given an NTA when she checked-in on December 18, 2025 and also "was given a document to sign related to a judge and bond hearing." (Dkt. No. 14-1.) This would indicate Petitioner was not being processed using the procedures found in § 1225(b)(1) as she was not told she was being detained to conduct a credible fear interview or even an "expedited removal interview." Under § 1225(b)(1), a noncitizen is scheduled to meet with an immigration judge only after the denial of a credible fear interview. *See* § 1225(b)(1)(B)(iii)(III).

1     All of these facts and circumstances lead to the conclusion that § 1225 was never the
2 basis for Petitioner's conditional parole into the United States and Respondents cannot now
3 invoke § 1225 to support Petitioner's continued detention.

4     **C. Petitioner's Detention Violates Due Process.**

5     Petitioner argues her release on her own recognizance followed by her re-detention
6 without notice or any other change in circumstances violates the Fifth Amendment's Due
7 Process Clause.

8     The Due Process Clause protects against deprivation of liberty without proper process,
9 and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person
10 shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v.
11 J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles
12 aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*,
13 507 U.S. 292, 306 (1993)).

14    The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*,
15 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the
16 immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.
17 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a
18 meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong
19 v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the
20 private interest that will be affected by the official action"; (2) "the risk of an erroneous
21 deprivation of such interest through the procedures used, and the probable value, if any, of
22 additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*,
23 424 U.S. at 335.

24

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 (same); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release). Here, Petitioner was arrested but immediately released on her own recognizance and subject to an Order of Supervision on January 15, 2024. At that point, she "took with [her] a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4. Accordingly, the first *Mathews* factor favors Petitioner.

2. Risk of erroneous deprivation of interest through procedures used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation is not just high; it appears to have already materialized. Counsel for Respondents wrongly asserts Petitioner was subject to § 1225 when released on January 15, 2024 when in fact she was released pursuant to § 1226. And Petitioner has, as a result, already had an

asylum application improperly denied because of Respondents' improper § 1225 classification.[3] Thus, the basis for her detention on December 18, 2025 was an erroneous belief Petitioner was subject to § 1225.  It is also significant that Petitioner has not been provided an NTA nor has she participated in an "expedited removal interview"—which was the purported reason for her detention.  In essence, the record indicates Petitioner remains detained in limbo.

Courts in this district have previously held that the government violates due process when an individual is released on their own recognizance but then detained under § 1226 pursuant to a Notice to Appear.  *See Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).  Here, Respondents have provided Petitioner with even less notice.  Respondents have not yet given Petitioner her Notice to Appear.  The risk of erroneous deprivation in this case is even higher where Petitioner has been detained without *any* current process being employed to effectuate her removal.

Accordingly, the second *Mathews* factor favors Petitioner.

3. <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S.

---

[3] This is not to say that Petitioner's asylum application would have been granted but only to remark Petitioner's application was not even considered.

at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community").  And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.  This is particularly true where Respondent for all intents and purposes is detained in limbo.

In short, the government's interest does not outweigh Petitioner's liberty interest where Petitioner has complied with the terms of her January 14, 2024 Order of Release.

In sum, all three *Mathews* factors favor Petitioner.  Respondents' detention of Petitioner violates the due process protections afforded to her by the Constitution.  As a result, Petitioner has proven by a preponderance of the evidence that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

### III.   ORDER

Accordingly, Petitioner's Second Amended Petition for Writ of Habeas Corpus (Dkt. No. 8) is GRANTED.  Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them shall immediately release Petitioner from custody and return her to the conditions of release identified in her January 14, 2024 Order of Release.  Absent a statutory basis to detain Petitioner or a violation of her January 14, 2024 Order of Release, Respondents shall not re-detain Petitioner without notice and an opportunity to be heard.—and as already identified in this order, 8 U.S.C.§ 1225 is not a proper statutory basis to detain Petitioner.  Within **TWENTY-FOUR (24)** hours of this Order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

Dated this 23rd day of January, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITIONER'S SECOND AMENDED HABEAS PETITION (DKT. NO. 8) - 11